ASA WHITEHEAD'S EXECUTORS *vs.* THE FIRST METHODIST
PROTESTANT CHURCH OF NEWARK and others.

In a bill for the foreclosure of a mortgage, in which a question arose be-
tween the complainants, whose mortgage was given before the erection of
a building on the land, and certain lienholders, who had liens for the
erection of the building, as to the proportions in which they were re-
spectively entitled to share in the proceeds of sale which were insufficient
to satisfy all the claims, it was *held* that the only safe mode of determin-
ing the relative claims of the respective parties will be for the master to
ascertain the fair market value of the lot and building, and also of the
value of the lot, as it stood at the time of the mortgage, clear of the
building, both valuations having relation, as near as may be, to the time
of sale.

The mode of estimating the relative values of the land and building in
*Whitenack* v. *Noe,* 3 *Stockton* 330, and in *Newark Lime and Cement Co.*
v. *Morrison,* 2 *Beasley* 136, criticised and disapproved,

*Zabriskie,* for complainants.

*Keasbey,* for the lienholders.

THE CHANCELLOR. The bill is filed to foreclose a mort-
gage, given by the First Methodist Protestant Church of
Newark to the complainants' testator, upon a lot of land
fronting seventy feet on the south side of Hill street, in
the city of Newark, to secure the payment of six thousand
dollars.

The mortgage bears date on the twentieth day of July,
1859, and was given to secure the purchase money of said lot
in one year from date with interest. The mortgagors cove-
nanted to keep the building to be erected upon the premises
insured against loss by fire in at least the sum of $4000, and
to assign the policy of insurance to the mortgagee as collateral
security for the payment of the debt. The mortgage was
recorded on the twenty-seventh of July, 1859. After the
date of the complainants' mortgage the mortgagors erected
a church edifice upon the lot. Ezra Reeve, one of the defend-
ants, filed a lien upon the building and lot for carpenter work

and materials, upon which, on the twelfth of April, 1862, he recovered judgment to the amount of $4845.84 besides costs. Jonas C. Reeve, another of the defendants, filed a lien for mason work and materials, upon which, on the twelfth of April, 1862, he recovered judgment for $2508.95 besides costs.

There is no question as to the validity and order of priority of the respective encumbrances.

It is admitted that the mortgage was given and recorded before the commencement of the building; that the mortgage is the prior encumbrance on the land, and the liens the prior encumbrance on the building.

The only question is, how is the relative value of the building and the land to be ascertained.

The complainants insist that the master shall ascertain the present value of the lot, were there no building upon it, not at a forced or public sale, but at its fair market value, to a person able and willing to hold it till he can realize its true value, and that the sum so ascertained shall be first paid to the mortgagee out of the proceeds of the sale.

The defendants insist that the true mode is to ascertain, as near as may be, the price which the building alone, and the building and the lot together, will respectively bring at sheriff's sale, and the relative value of the two will fix the proportion of the proceeds of the sale to which the parties are respectively entitled.

It is clear that the value of the building and lot should be ascertained by the same standard, and that value should have relation, as near as may be, to the time of the sale.

The true measure of equity unquestionably would be to give to the mortgagee the value of the lot clear of the encumbrance of the building, and to the lienholder the enhanced value which his labor and materials have given to the lot. The mortgagee cannot in equity claim that he shall be benefited by the work and labor of the mechanic or materialman, but he has a strong claim in justice and equity to insist that he shall not be injured by the operation of their claims. On the other hand, the materialman has a right to insist that the loss

incurred by the mortgagee by a forced sale, or by a depreciation in value of property at the time of the sale, shall not be thrown upon him. Each claimant should bear his proportionate share of loss resulting from a sale below the real value of the property. That is a loss to which every mortgagee is exposed, and which is in no wise affected by the building. It is a loss in which both parties necessarily share in proportion to the amount of their respective claims. These positions seem to be self-evident truths. The object of the court has been in all cases to reach this result, though I think it clear that in several cases erroneous methods of attaining it have been adopted. Thus in *Whitenack* v. *Noe*, 3 *Stockt.* 330, the Chancellor thought it would be just for the master to ascertain the original cost of the improvements by means of the bill of particulars furnished with the records of the liens, and then make a proper deduction for depreciation to the time of sale. And in *The Newark Lime and Cement Co.* v. *Morrison*, 2 *Beasley* 136, the value was authorized to be ascertained in the same mode or in such other mode as the parties might agree upon. Now it is obvious that although a reference to the actual cost of the labor and materials may be used as an aid in estimating the value, it can rarely serve as a standard by which to ascertain the real addition which the building has made to the market value of the property. The building may be so injudiciously located, or defectively constructed, or so unfit for the purpose for which it was designed, as to add comparatively but little to the real value of the land or to the price which it will command in the market. The real value of a building may bear no relation to its actual cost. To adopt this estimate of value necessarily subjects the mortgagee to the hazards of all the consequences resulting from the want of judgment of the owner and the ignorance and dishonesty of the mechanics and materialmen.

By this process the security of the mortgagee may be greatly deteriorated. Thus, supposing this church to have cost $18,000, the original cost of the lot being $6000 ; now if the value of the lot and building together is but $12,000, sup-

M*

posing real estate to have undergone no change in value, and the lot to be still worth, independent of the building, $6000 the mortgagee will have lost just half of his debt, while the complainants will be paid the principal of their liens nearly in full.    If the diminution in the value of the security results from depreciation of value or a forced sale it may justly fall on the mortgagee, but if, from an injudicious investment in the building, the mortgagee should not be prejudiced by it. In the latter event the true course would be to deduct the full amount of the mortgage debt from the price, and pay the balance to the lienholders.

The only safe mode of determining the relative claims of the respective parties will be for the master to ascertain the fair market value of the lot and building and also the value of the lot clear of the building, and improvement upon it, as it stood at the time of the mortgage.    This will establish the proportions of the claims of the respective parties upon the proceeds of this sale.

It will be decreed accordingly.